WESTINGHOUSE ELECTRIC & MFG. CO. v. SCINTILLA MAGNETO CO., Inc., et al.

District Court, S. D. New York. November 20, 1928.

Cooper, Kerr & Dunham, of New York City (Victor S. Beam and Thomas J. Byrne, both of New York City, of counsel), for plaintiff.

White & Case, of New York City (Franklin M. Warden, of Chicago, Ill., Lawrence K. Sager, of New York City, and S. Michael Pineles, of Chicago, Ill., of counsel), for defendants.

FRANK J. COLEMAN, District Judge. The patent in suit is for a combination in an electric switch or circuit breaker for outdoor use in connection with a polyphase circuit of high voltage. No one of the elements enter-

ing into the combination was invented by the patentee, and defendants allege anticipation.

Polyphase circuits consist of more than one line or wire in the same circuit, and, in order to break the current in the circuit, it is necessary to break it in all the lines simultaneously. It was common practice to install a separate switch on each line, with one actuating mechanism so connected with the movable contacts in each switch that when it was operated it would move those contacts simultaneously. For use with high voltage each of these separate switches was so constructed that the stationary and the movable contacts were submerged in a nonconducting oil, and it was known to the art that it was desirable to have the movable contacts rise in closing the switch and fall in opening it, so that gravity might cause the current to be broken in case some accident happened to the mechanism. Other features that had been developed were to have the leads from the circuit enter the switch at the top and in converging directions; to have the plane of the leads at right angles to the longitudinal plane of the entire breaker, etc. It is not necessary, however, to consider these various features in detail, because, while they are mentioned in the specification of the patent in suit, none of them was originated by the patentee, nor do the claims of the patent embody them.

The purpose which the patentee Harris had in mind was to design a polyphase circuit breaker that might be installed outdoors. Never before had this been done in connection with a polyphase breaker that had its individual switch elements separated from each other and from the main actuating mechanism, though other types of switches had previously been designed for that use. His problem involved no innovation in the principles nor in any of the operating parts of the breaker, but presented merely a question of protecting it against rain and snow.

What Harris did was to adopt the already approved features of polyphase circuit breakers which were best suited to his purpose, and to provide casings for the various parts. There is no question but that, if the casings had been omitted, there would have been nothing new in the specification of this patent and the claims would have been completely anticipated. The casings which he mentioned are not of any particular form or construction, and he does not claim anything patentable in them alone.

It will be necessary to consider more in detail the mechanism set forth in his specification. Each of the separate switches consists of a casing partly filled with oil and

having within it the stationary and movable contacts. The movable contacts are attached to a vertical rod which passes upward between the stationary contacts to the top of the casing. The switch is closed by raising this rod with the movable contacts attached to it; and it is opened by lowering it. The raising and lowering motion is accomplished by having the rod connected by means of a bell crank lever with a horizontal rod which passes through the top of each of the casings, and is connected with the main actuating mechanism. This horizontal rod reciprocates axially, causing the rotation of the bell crank lever in each of the separate switches, which in turn causes a raising or lowering of the vertical rod in each switch. The horizontal rod is caused to move by the operation of the actuating mechanism which consists of a bell crank lever connected with a power lever and having a latch to hold it in position when the switch is closed, and a tripping device to loosen the latch when it is desired to open the switch.

The specification does not describe the casings other than to indicate that there is a separate casing for the main actuating mechanism, that the casings of the separate switches are to contain the operating parts, and that the horizontal reciprocating rod is to have a pipe casing over such parts of it as are outside the casings of the separate switch elements and the main actuating mechanism.

The claims in the patent which are relied on are as follows:

"Claim No. 1. In a circuit interrupter, the combination with a plurality of interchangeable groups of stationary and movable contact members, inclosing casings for the respective groups and operating mechanisms located within the casings of a main actuating mechanism, comprising an independent inclosing casing, an operating lever, a latch and a tripping means, and means for interconnecting the operating mechanisms and the main actuating mechanism.

"Claim No. 3. In a circuit interrupter, the combination with a plurality of groups of stationary and movable contact members, operating mechanisms and inclosing casings for the respective groups, and interconnecting means for the several operating mechanisms, of a main actuating means for effecting simultaneous action of the operating mechanisms, an independent inclosing casing therefor, and pipe or tube sections between the adjacent inclosing casings through which the interconnecting means operates.

"Claim No. 4. In a circuit interrupted, the combination with a plurality of groups of

stationary and movable contact members, inclosing casings for the respective groups, and operating mechanisms located within casings and comprising shafts, bell crank levers and connecting links of a main actuating mechanism, an independent inclosing casing therefor, a substantially horizontal rod that connects the actuating mechanism with the bell crank levers, and pipe or tube sections between adjacent casings through which the interconnecting rod operates."

The only elements mentioned in these claims which distinguish the Harris machine from those previously used indoors are the casings. The casings called for by the claim are of three classes: (1) The casings inclosing the separate switches and their operating mechanism; (2) the casing around the main actuating mechanism; and (3) the casing around the horizontal rod which connects the actuating mechanism with each of the separate switches. In claim No. 1 only two classes of casings are called for, namely, those around the separate switches and that around the main actuating mechanism. In that claim there is no mention of a casing around the horizontal rod. In claims Nos. 3 and 4 all three classes of casings are called for, though claim No. 3 apparently does not require the inclusion of the operating parts of each separate switch inside of the casing of that switch.

I find that the Martin station switch in use in 1905 anticipated every element of these three claims except the casings. The Martin circuit breakers had casings around the separate switches which contained the nonconducting oil, but the operating mechanism for each switch was placed above and outside of these casings, and the main actuating mechanism had no real casing; while the horizontal rod connecting the main actuating mechanism with the operating parts of each of the individual switches had no casing whatever. The Martin circuit breakers differ considerably from the specification in the Harris patent; for instance, the movable contacts rotated instead of rising and falling, and the operating mechanism for each separate switch is accordingly different. But the claims of the Harris patent are so broad that they cover each of the elements in the Martin switches and add only the casings as above mentioned. (This statement is subject to qualification in regard to the fourth claim, which expressly mentions as part of the operating mechanism of the individual switches bell crank levers, etc., which are not in the Martin machines. But I do not understand that plaintiff makes any point of this.) There can be no doubt

therefore but that the Martin machines anticipated the claims in the Harris patent, except in so far as the claims call for the above-mentioned casings as elements in the combination.

Of the three classes of casings called for by the patent two had previously been used in the art, viz., casings for the separate switch elements and casings for the main actuating mechanism. Never had there been a casing for the horizontal reciprocating rod. There was, however, no novelty in the idea of putting casings over parts of machines in order to protect them from the weather, and to have the casings conform to the general configuration of the machines. There had been other types of switches installed outdoors with separate casings over their various parts.

The principal question presented is whether it was an exercise of the inventive faculty to provide for the casings mentioned in the claims of the patent. The art already had the circuit breaker with separate switch units, a separate main actuating mechanism, and interconnecting parts, exactly as called for by the claims in the patent. In order to install it for outdoor use some sort of housing was necessary, and this could take the form of either a housing over the whole machine or separate casings over the separate parts. Harris determined to put separate casings over the separate parts, and under the broad claims of this patent that is all he can be credited with contributing to the art. Once it was determined to use separate casings instead of a single housing over the entire machine, an ordinary skilled workman could specify the casings. The actuating mechanism was separate, and had already in previous examples been separately incased; the switch units, together with their operating parts, were separate, and in some previous examples had separate casings; and the only remaining part was the horizontal reciprocating rod. I am unable to see anything worthy of the name of invention in what Harris did, as embodied in the claims of the patent. In view of the familiarity of the art with all types of casings for machinery, and especially electrical machinery, I believe it was an exercise of good judgment and ordinary skill rather than of a creative faculty to determine to use separate casings of the three classes mentioned in the patent. Plaintiff's contention that Harris' work had a revolutionizing effect, and led to the use of outdoor substations, I find is unfounded. I believe this result was brought about by improvement in the bushings rather than by Harris' casings.

Several other serious questions are pre-

sented, but, in view of my conclusion on the issue of anticipation, it would be superfluous to consider them at this time. Some of the evidence was taken subject to objections upon which decision was reserved. These objections are overruled with exceptions to the proper parties.

Decree for defendants. Settle decree on notice.